UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA T. HICKEY,

                    Plaintiff,                          Civil Action No. 17-10123
                                                     Honorable John Corbett O'Meara
                                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]

Plaintiff Regina T. Hickey ("Hickey") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that Hickey has offered new and material evidence, and has shown good cause why that evidence was not presented in the prior proceeding. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **DENIED**, Hickey's Motion for Summary Judgment (**Doc. #12**) be **GRANTED IN PART**, and that, pursuant to sentence six of 42 U.S.C. § 405(g), the Commissioner's decision be **REMANDED** to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On March 10, 2014, and March 24, 2014, Hickey filed applications for DIB and SSI, respectively, alleging disability as of December 20, 2013. (Tr. 198-210). These applications were denied initially on June 16, 2014. (Tr. 138-46). Hickey filed a timely request for an administrative hearing, which was held on February 4, 2015, before ALJ Ramon Suris-Fernandez. (Tr. 81-111). Hickey, who was represented by attorney David Wood, testified at the hearing, as did vocational expert Ruth Rondberg. (*Id.*). On March 3, 2015, the ALJ issued a written decision finding that Hickey is not disabled under the Act. (Tr. 23-29). On August 16, 2016, the Appeals Council denied review. (Tr. 8-13). Hickey timely filed for judicial review of the final decision on January 14, 2017. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

C.      **Background**

        *1.      Hickey's Reports and Testimony*

At the time of the administrative hearing, Hickey was 50 years old, and at 5'8" tall, weighed 150 pounds.[1] (Tr. 85-86). She was single and had moved out of an apartment with her long-time boyfriend and into her parents' house. (Tr. 87, 92, 96). She completed college, earning a bachelor's degree. (Tr. 86, 231). Previously, she worked as a "HDMA Auditor" for a mortgage company, as a home health care provider, and as a support services coordinator; however, she stopped working on July 26, 2013, when she had a hysterectomy and was then terminated shortly before she was scheduled to return to work. (Tr. 90, 231-32).

Hickey alleges disability primarily as a result of "severe weakness of all muscles and

---

[1] Before the alleged onset date, Hickey weighed approximately 160 pounds. (Tr. 240). When she first became ill, however, she lost weight rapidly, dropping to approximately 125 pounds before she was able to regain some weight. (*Id.*).

3

extreme muscle loss," as well as significant weight loss, exhaustion, and kidney abnormalities. (Tr. 230). Apparently, she became ill with food poisoning in December 2013, lost a significant amount of weight and muscle mass, and then woke up one day unable to walk and barely able to move. (Tr. 91-92, 231). She testified that she was "a complete invalid for three months" before she slowly began improving. (Tr. 94). Over time, she has regained some strength, but her endurance is not "in any way normal." (Tr. 92). For a while, she used a "wheeling walker," but by the time of the hearing, this was no longer necessary, as she had learned to do less and rest when needed. (Tr. 92-93).

In terms of daily activities, Hickey is able to prepare simple meals, help with laundry, do dishes, and shop for groceries. (Tr. 98-99, 242-44). She frequently has to change positions (e.g., sitting to standing), can lift a gallon of milk, and can climb stairs (but has to rest afterward). (Tr. 100-01). She testified that she has "five or six really good days in a month" but, even on those days, still has to take frequent breaks from any activity. (Tr. 104).

### 2.      *Medical Evidence*

#### a.      *Medical Evidence Submitted to the ALJ*

On December 4, 2013, Hickey presented to the emergency room, complaining of abdominal pain, cramping, nausea, and diarrhea. (Tr. 357). She was diagnosed with gastroenteritis and advised to return if her symptoms worsened. (Tr. 359). A couple of weeks later, on December 17, 2013, Hickey returned to the emergency room with continued complaints of nausea, as well as "extensive weight loss and muscle mass loss" over the past two weeks. (Tr. 361). CT scans of her abdomen and pelvis showed no acute changes, although a urological consultation was recommended because of the "bizarre appearance" of her kidneys. (Tr. 363).

Medical records indicate that, during 2014, Hickey's condition improved somewhat,

although she continued to experience significant weakness and lack of stamina. (Tr. 433 ("still cannot descend her 22 steps & any extra exertion makes her very weak" in January 2014; "still some weakness" in February 2014), 480 ("inability to ambulate without a 4-wheeled walker" in March 2014), 487 ("doing a lot better" in May 2014 on a B12 supplement and high-protein diet, but still notices fatigue and weakness if she does too much), 566 (noting continued trouble with writing, stirring, and lifting her left shoulder in August 2014)).

On March 11, 2014, Hickey presented to Min Zhu, M.D. for a neurology consultation. (Tr. 470-72). Hickey complained of episodes of tingling, weakness, cramping, and weight loss, saying that if she was too active or deviated from her high-protein diet, her episodes worsened. (Tr. 470). Dr. Zhu characterized Hickey's neurological examination as "unremarkable" and indicated that the etiology of her symptoms was unclear. (Tr. 472). A March 19, 2014 CT scan of Hickey's brain was normal, as was a May 5, 2014 EMG study, and a March 19, 2014 CT of her cervical spine showed only mild degenerative disease at C6-C7. (Tr. 476, 477, 484).

At a follow-up visit on September 9, 2014, Dr. Zhu noted:

> … [Hickey] has a history of Beckwith-Wiedemann syndrome and fibrodysplasia ossificans, who was evaluated for episodes of weakness in both arms and legs, "losing muscle," and pain. She reports that the pain in [her] hands got much better with B12 supplement. However, when overdoing, she notice[s] attacks of pain in the arms or legs. If she continues to do it, she develops weakness and "losing muscle mass" in arms/legs, lasting for a few weeks. She told me that she had to lay down for almost 3 weeks after last EMG study.

(Tr. 606). Dr. Zhu indicated that Hickey's "extensive evaluation [was] nonrevealing" and the "etiology of her symptoms [was] not entirely clear." (*Id.*). Dr. Zhu indicated reluctance to obtain a muscle biopsy because the "yield is likely very low"; instead, she referred Hickey for a second opinion. (Tr. 606-07).

Hickey saw another neurologist, Jordan Taylor, D.O., at Metro Health on November 5,

2014, for "all over muscle weakness" made worse by even minor activity or exertion. (Tr. 619-28). After ruling out other disorders, Dr. Taylor ultimately diagnosed Hickey with myopathy. (Tr. 625). A repeat EMG of Hickey's bilateral lower extremities performed on November 12, 2014 was "essentially normal" but it was noted:

> There were sparse polyphasic motor units which may represent chronic neuropathic changes in several muscles of bilateral lower extremities. These can be seen at this rate within normal musculature, so they are not currently felt to be pathologic. Certainly, no clear evidence for a myopathic origin of the patient's weakness. No evidence of peripheral polyneuropathy or radiculopathy either.

(Tr. 645). Dr. Taylor referred Hickey to Michael Jarvis, D.O., who indicated on December 16, 2014, that a muscle biopsy was indeed the next step. (Tr. 663-65). At the time of the administrative hearing in February 2015, however, that biopsy had not been performed.

### b. Medical Evidence Submitted to the Appeals Council

While Hickey's request for review was pending, her attorney notified the Appeals Council on April 30, 2015, that "newly available relevant and material evidence" would soon be submitted. (Tr. 18). Specifically, he indicated;

> On her hearing date, Claimant was awaiting a muscle biopsy in an effort to diagnose the source of her weakness and fatigue. The biopsy was subsequently performed and revealed a neuromuscular abnormality. Claimant has a follow-up appointment with a neurologist in early May to discuss the biopsy results, possible diagnoses, and treatment plan.
>
> The evidence of this objective medical test and subsequent neurological consultation is material and relevant to Claimant's condition prior to the decision date and is needed to complete the medical records to this claim.

(*Id.*). Hickey's attorney then submitted several sets of medical records, which the Appeals Council made part of the record and exhibited. (Tr. 9, 12-13, 667-831). However, the Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. 9).

Specifically, the new evidence showed that, on February 27, 2015, a few days before the ALJ's decision, Hickey saw a physician's assistant, who indicated that she needed a referral for a muscle biopsy to determine the cause of her weakness. (Tr. 691). A few days later, on March 6, 2015, Hickey saw Gregory Johnson, M.D. for evaluation prior to the recommended muscle biopsy. (Tr. 710). Dr. Johnson noted that Hickey had "generalized weakness, but primarily leg weakness that was accentuated for a while, improved, and now has reached a plateau and is stable, but with continued weakness." (*Id.*). Dr. Johnson noted that, on examination, Hickey had weakness of the leg to quadriceps extensors, and he agreed to proceed with a muscle biopsy. (*Id.*). The muscle tissue biopsy analysis was performed by pathologists on March 15 and 16, 2015 (12-13 days after the ALJ's decision). (Tr. 668-74, 704). As an explanation for "muscle weakness," the pathologists concluded that the biopsy revealed objective evidence of chronic neurogenic disease. (*Id.*).

On April 29, 2015, Hickey saw David Mayo, M.D., who confirmed that the biopsy report indicated "neurogenic changes in the muscle." (Tr. 676-77). Hickey continued to report exercise intolerance, muscle weakness, joint pain, and fatigue, and Dr. Mayo observed a moderate limp and abnormal gait vaulting ("an odd, highly variable diskinetic gait, involving both lower extremities, with frequent twitching, jerking, and a long stride length"). (Tr. 677-78). Dr. Mayo encouraged Hickey to follow up with her neurologist "for further evaluation and a diagnosis of her weakness, tremors, and gait disorder." (Tr. 678).

On June 5, 2015, Amanda Huver, D.O. summarized Hickey's limitations in an "ADA letter" for housing, indicating that she needs an apartment with "wide doors, normal height counters, hand rails near the toilet … enough room to navigate a wheelchair … [l]ow pile carpet so she can maneuver wheelchair and walker." (Tr. 810). That same day, Dr. Huver also certified

that Hickey suffered from permanent muscle disease and weakness and required a disability parking placard. (Tr. 812).

### 3. *Vocational Expert's Testimony*

Ruth Rondberg testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 106-10). The ALJ asked the VE to imagine a claimant of Hickey's age, education, and work experience who can perform light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolding; no work around machinery or unprotected heights; and no more than occasional kneeling, crouching, crawling, and balancing. (Tr. 108). The VE testified that the hypothetical individual would be capable of performing Hickey's past relevant work as a medical secretary, auditor, and general office clerk. (*Id.*).

## D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Hickey is not disabled under the Act. At Step One, the ALJ found that Hickey has not engaged in substantial gainful activity since December 20, 2013 (the alleged onset date). (Tr. 25). At Step Two, the ALJ found that she has the severe impairment of myopathy. (*Id.*). At Step Three, the ALJ found that Hickey's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Hickey's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolding; no work around machinery or unprotected heights; and no more than occasional kneeling, crouching, crawling, and balancing. (Tr. 25-26).

At Step Four, the ALJ concluded, based in part on the VE's testimony, that Hickey is capable of performing her past relevant work as an auditor. (Tr. 28). As a result, the ALJ

concluded that Hickey is not disabled under the Act.  (Tr. 29).

### E.       Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

In this case, Hickey argues that remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence first submitted to the Appeals Council.[2] (Doc. #12 at 15-17). Specifically, Hickey points to post-hearing muscle tissue biopsy results objectively demonstrating that she suffers from chronic neurogenic disease; Dr. Mayo's recommendation that she follow up with her neurologist "for further evaluation and a diagnosis of her weakness, tremors, and gait disorder"; and opinions from her primary care physician that she requires a permanent disability parking placard and accommodations in housing. (*Id.*). For

---

[2] Hickey advances other arguments in her motion for summary judgment, namely that the ALJ erred in failing to question the VE about conflicts between her testimony and the Dictionary of Occupational Titles, and in concluding that Hickey could perform her past relevant work as an auditor. (Doc. #12 at 17-25). Because the Court agrees that a sentence six remand is appropriate, however, it need not pass on Hickey's other alleged errors. Nevertheless, on remand the ALJ should fully consider all of these issues.

the reasons set forth below, the Court finds that Hickey has established the propriety of a sentence six remand.

Remand to consider additional evidence is appropriate when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotations omitted). Here, the crucial documents are dated between March 2015 and June 2015 (Tr. 668-74, 676-78, 704, 710, 810, 812); thus, they can be considered "new" evidence, as they did not exist at the time of the February 2015 hearing.[3]

Additionally, Hickey has demonstrated good cause for failing to present this new evidence sooner. In *Harrison v. Comm'r of Soc. Sec.*, 2015 WL 4756553 (E.D. Mich. Aug. 12, 2015), a strikingly similar case, the District Court adopted the Magistrate Judge's recommendation that the case be remanded pursuant to sentence six. In *Harrison*, the plaintiff alleged disability, in part, because of chronic back and right shoulder pain. At the time of the January 2013 administrative hearing, she told the ALJ that she hoped to have MRIs performed on her neck and shoulder, but that she was waiting for insurance company approval of the tests. *Id.* at *1. The MRIs were subsequently performed in March 2013, and they showed mild left

---

[3] The Commissioner argues that some of the records first submitted to the Appeals Council – including physical therapy notes from August to September 2014, and a February 27, 2015 medical report – are not new, "as they were in existence at the time of the ALJ's March 2015 decision …." (Doc. #14 at 6 (citing Tr. 20, 689-99, 830-31)). Hickey disagrees, arguing that "the Commissioner cites no fact, law or policy supporting her assertion that the date on a medical record constitutes immediate availability of that record to a patient." (Doc. #16 at 4). Under the circumstances, the Court need not resolve this issue, as – even assuming that these records are not "new" – other medical evidence first submitted to the Appeals Council, and discussed in greater detail herein, is new and warrants a sentence six remand.

foraminal stenosis, possible impingement on the C7 nerve root, and likely impingement of the L5

nerve root. In agreeing with the Magistrate Judge that Harrison had "good cause" for not

submitting the MRI results to the ALJ, the District Court stated:

> Given [the plaintiff's] uncertainty about whether she would be able to
> obtain the MRIs and the medical professionals' delay in providing the
> results to [her], [the plaintiff] had good cause for not seeking to present the
> MRIs at the hearing.
>
> … [T]his is not a case where [the plaintiff] and her counsel "sandbagged"
> the ALJ, never mentioning the MRIs only to have the tests performed after
> an unsuccessful hearing or decision. In fact, [the plaintiff] specifically
> told the ALJ that she [] wanted to have the MRIs.

*Id.* at *4.

As in *Harrison*, there is no indication here that Hickey or her attorney "sandbagged" the

ALJ, staying silent about the muscle biopsy only to have the tests performed after an

unsuccessful hearing or decision. Rather, at the administrative hearing, Hickey's attorney

indicated that "whatever is wrong with Ms. Hickey has not exactly been diagnosed yet" and that,

although she has "some kind of neurological impairment … they haven't found out what's

causing this fatigue that she gets." (Tr. 84). Hickey then testified that, at the time of the

February 2015 hearing, her new neurologist, Dr. Taylor, was "going to pursue some muscle

biopsy and see if that details what's wrong." (Tr. 105). She further explained the delay in

obtaining this testing, saying that she had been without health insurance for a period of time, and

after her insurance was reinstated, she "got kicked over to yet another new doctor." (*Id.*). For all

of these reasons, and because the new evidence documents an ongoing, real-time evaluation and

diagnosis of Hickey's muscle weakness and fatigue, the Court finds good cause for Hickey's

failure to present this evidence to the ALJ. *See, e.g., Koulizos v. Sec'y of Health & Human

Servs.*, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (good cause is shown for a sentence six

remand "if the new evidence arises from continued medical treatment of the condition, and was

12

not generated merely for the purpose of attempting to prove disability"); *Freeman v. Comm'r of Soc. Sec.*, 2008 WL 2074019, at \*6 (W.D. Mich. May 14, 2008) ("Plaintiff has demonstrated good cause for presenting this new evidence, because it is continued medical treatment of her chronic pelvic pain.").

The question of whether the new evidence is "material" is a somewhat closer call. With respect to this prong, courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Here, the ALJ issued his decision on March 3, 2015. (Tr. 23-29). Just three days later, Hickey saw Dr. Johnson, who observed that, on examination, Hickey had weakness of the leg to quadriceps extensors, and agreed to proceed with a muscle biopsy. (*Id.*). The muscle tissue biopsy analysis was performed by pathologists on March 15 and 16, 2015, and revealed objective evidence of chronic neurogenic disease. (Tr. 668-74, 704). Just a month later, Dr. Mayo observed "an odd, highly variable diskinetic gait, involving both lower extremities, with frequent twitching, jerking, and a long stride length." (Tr. 677-78). By June of 2015, Hickey's primary care physician, Dr. Huver, was opining that she required a permanent disability parking placard and an apartment with "wide doors, normal height counters, hand rails near the toilet … enough room to navigate a wheelchair … [l]ow pile carpet so she can maneuver wheelchair and walker."[4] (Tr. 810, 812).

---

[4] The Commissioner argues that Dr. Huver's opinion that Hickey requires disability accommodations in housing has "no relevance to whether [she] is disabled under the Act." (Doc. #14 at 9-10 (citing 20 C.F.R. §§ 404.1504, 416.904 ("A decision by any non-governmental agency or any governmental agency about whether you are disabled or blind is based on its own rules and is not our decision on whether you are disabled or blind …. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."))). The Court agrees that such an opinion is not *binding* on the ALJ; the question, however, is not whether the

Hickey asserts that, "The ALJ's decision that [her] functional limits were not so extreme as alleged was based in large part on the state of the medical evidence reviewed by the ALJ, and the extent to which it was unclear regarding the objective cause of her symptoms." (Doc. #12 at 16). The Court agrees that the ALJ appears to have discounted Hickey's complaints, at least in part, because there was no clear medical explanation for what was causing her symptoms. (*E.g.*, Tr. 27 (Hickey had been diagnosed with chronic kidney disease and other kidney impairments, but there was "no evidence showing that these impairments are causing [the] weakness and fatigue the claimant alleged"), 28 ("Despite undergoing 'extensive' evaluation, her neurologist, Dr. Min Zhu, failed to find [a] medical basis for the claimant's symptoms."), 28 (observing that EMG testing showed "no clear evidence" for a myopathic origin of [her] weakness")). Given all of these facts, the Court finds that, coupled with the other medical evidence and hearing testimony discussed above, had this new evidence been available to the ALJ at the time of his decision, there is at least a "reasonable probability" that he would have reached a different disposition. Thus, this new evidence is material, and warrants remand under sentence six of § 405(g).

III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **DENIED**; Hickey's Motion for Summary Judgment (**Doc. #12**) be **GRANTED IN PART** to the extent it seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g); and this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

---

ALJ was bound by such a finding, but whether, taking all of the available evidence into account, there is a "reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Dated: October 30, 2017
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager